UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| TYRONE WHEELER, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:08-cv-889-LJM-DML |
| | ) | |
| UNITED PARCEL SERVICE, | ) | |
|     Defendant. | ) | |

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on defendant's, United Parcel Service ("UPS"), Motion for Summary Judgment (Dkt. No. 24). Plaintiff, Tyrone Wheeler ("Wheeler"), claims that UPS fired him on two separate occasions because of his race. Dkt. No. 1 at 2. UPS claims it terminated Wheeler for legitimate reasons: (1) Wheeler intentionally failed to complete his assigned work in order to "prove a point," and (2) Wheeler was dishonest. Dkt. No. 25 at ¶¶ 14, 28. For the reasons set forth below, UPS's Motion for Summary Judgment (Dkt. No. 24) is **GRANTED**.

### I. BACKGROUND[1]

Wheeler is an African-American who began working for UPS as a loader on August 28, 1988. Dkt. No. 29 at ¶¶ 1-2, 29.[2] He became a "swing package driver" (a driver without

---

[1] While Wheeler entitles his facts as "Statement of Material Facts in Dispute," none of these facts directly contradict the facts offered by UPS in its brief in support of its Motion for Summary Judgment. Where the facts given by the parties raise different inferences, the Court construes the facts in favor of Wheeler, the non-moving party.

[2] Wheeler's affidavit states that he worked as a loader for UPS from 1998 until 1996. See Dkt. No. 30-2 at ¶ 2-3. This is obviously incorrect. Wheeler's brief indicates that he worked for UPS for eighteen years prior to his firing in 2006, Dkt. No. 29 at ¶ 29,

a permanent route) in 1996. *Id.* at ¶¶ 3-4. Wheeler began working a permanent route in early 2006. *Id.* at ¶ 6. In August or September of 2006, Wheeler's route was changed in that he was given more business stops, which take longer. *Id.* at ¶ 8. Wheeler was told that some of his other stops would be taken away, but none were. *Id.* at ¶¶ 8-9. Wheeler complained to Steve Howard ("Howard"), the Business Manager for the West Center in UPS's Indiana District, that he had too much work because of the change in his route. *Id.* at ¶ 10. UPS did not adjust his route. *Id.* at ¶ 11.

On November 15, 2006, UPS Supervisor Michael Peters ("Peters") met with Wheeler on his route and determined that Wheeler had failed to deliver three business packages prior to the required 5:00 p.m. deadline. Dkt. Nos. 25 at ¶ 17-18; 25-3. On November 16, 2006, Wheeler met in the morning with Howard, Peters, and UPS Division Manager Derick Craft ("Craft") regarding Wheeler's failure to timely deliver the packages the day before. Dkt. No. 25 at ¶ 19. Wheeler committed to correct the problem. *Id.* On that same day, Wheeler was assigned a new loader, who loaded Wheeler's truck in a very disorganized way. Dkt. No. 29 at ¶¶ 12-13. Wheeler also had more packages than normal that day. *Id.* at ¶ 14. He showed the loaded truck to Peters and complained to Howard about it. *Id.* at 15-16. Despite the fact that management normally helps drivers in that situation to reconfigure their loads, neither Peters nor Howard offered Wheeler any assistance. *Id.* at ¶¶ 17-18. At 1:00 p.m. that day, Wheeler called the UPS center and asked for help, which drivers are encouraged to do when they know they will be unable to complete their routes.

---

which would mean that Wheeler began with UPS in 1988. This makes more sense. Thus, for purposes of this Order the Court will assume Wheeler began with UPS on August 28, 1988—a fact that is helpful for establishing context but not material.

Dkt. Nos. 25 at ¶ 22; 29 at ¶¶ 21, 23.  Wheeler was told he would get help.  Dkt. No. 29 at ¶ 24.  Wheeler called again at 1:30 p.m. and was told that Howard said he was not going to get help.  *Id.* at ¶ 25.  Wheeler called again at 2:30 p.m. and was told to keep working.  *Id.* at ¶ 26.  Another driver assisted Wheeler at around 8:00 p.m., and Wheeler finished the route by 9:00 p.m.  Dkt. Nos. 25 at ¶¶ 25-26; 29 at ¶ 27.

Howard believed that Wheeler, who would normally finish his route early enough to assist other drivers, was attempting to "prove a point" during his November 16, 2006, route.  Dkt. Nos. 25 at ¶¶ 27–28; 25-3 at 16–20; 25-6 at ¶ 4.  Therefore, on November 17, 2006, Craft terminated Wheeler upon Howard's request for "failure to complete assigned work."  Dkt. Nos. 29 at ¶¶ 30-31; 25-4 at 38.  On November 21, 2006, after a meeting between Wheeler, Howard, and Union Steward Mike Strack ("Strack"), Wheeler signed a reinstatement agreement providing that he would return to work with a one-day unpaid suspension and a final warning about his failure to complete assigned work.  Dkt. Nos. 29 at ¶ 29; 25-4 at 38.

In March of 2007, UPS terminated Wheeler again, this time for dishonesty.  Dkt. No. 29 at ¶ 50.  UPS's security group investigated and determined that Wheeler had signed customers' names several times for Next Day Air packages just prior to 10:30 a.m., which is the time by which these packages were supposed to be delivered.  Dkt. No. 25 at ¶¶ 9-10.  The collective bargaining agreement for Teamsters Local 135—the union to which Wheeler belonged—provided for immediate termination for dishonesty.  *Id.* at ¶¶ 7, 11.  On March 5, 2007, Wheeler met with Strack, Craft, Peters, and UPS Security Manager Joe Simon.  *Id.* at ¶ 12.  At this meeting, Wheeler admitted he had signed for the packages in question and that doing so was dishonest.  *Id.* at ¶ 13.  Craft terminated Wheeler that day,

3

based on Howard's request. *Id.* at ¶ 14; Dkt. No. 29 at ¶ 51. Following his termination, Wheeler filed a grievance pursuant to the collective bargaining agreement, and the UPS/Teamsters grievance panel denied his grievance. Dkt. No. 25 at ¶¶ 15-16.

Wheeler compares himself to several other drivers for the purpose of his first termination. Harry Lowden ("Lowden"), Peggy Webber, John Kissick, Aisha Foulty, Jim Stinnett, Shawn Ashton, and Scott Johnson were package drivers who would call in for help on a routine basis, and UPS never disciplined or terminated any of these drivers for doing so. Dkt. No. 29 at ¶¶ 35-38. Furthermore, based on Howard's request, Craft gave Lowden a letter of warning for failing to deliver a commercial package properly. *Id.* at ¶¶ 47-49.

For purposes of Wheeler's second firing, Wheeler compares himself with Chris Mulkey ("Mulkey"), who was fired for dishonesty on November 27, 2007. *Id.* at ¶ 55. Mulkey became a driver for UPS in September 2007. Dkt. No. 25 at ¶ 31. Howard terminated Mulkey in November 2007, after Mulkey removed tracking labels from several packages and returned to the center having not delivered the packages. Dkt. Nos. 25 at ¶ 32; 29 at ¶ 59. Mulkey filed a grievance. Craft reinstated Mulkey after he served a forty-five day unpaid suspension because Mulkey was a new driver who had not had prior issues. Dkt. Nos. 25 at ¶ 33; 29 at ¶¶ 66-67.

Finally, it is uncontested that Howard terminated African-American package car driver Curtis Dabney ("Dabney") twice for dishonesty, and UPS subsequently reinstated him both times. Dkt. No. 25 at ¶ 35.

## II. **STANDARD**

Summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267-68 (7th Cir. 1990). Motions for summary judgment are governed by Federal Rule of Civil Procedure 56(c), which provides in relevant part:

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials which "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 997 (7th Cir. 1996). It is not the duty of the Court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which she relies. *See Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996). When the moving party has met the standard of Rule 56, summary judgment is mandatory. *See*

*Celotex*, 477 U.S. at 322-23; *Shields Enters., Inc. v. First Chi. Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992).

In evaluating a motion for summary judgment, the Court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party. *See Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996). The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *See Anderson*, 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996). Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). "If the nonmoving party fails to establish the existence of an element essential to [her] case, one on which [she] would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996).

### III. **DISCUSSION**

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating "against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). There is no direct evidence of discrimination in this case. Therefore, in order to survive summary judgment, Wheeler must proceed under the indirect burden-shifting analysis established in *McDonnell Douglas Corporation v. Green*, 411 U.S.

792 (1973). Under the indirect method, Wheeler must make the following prima facie showing: (1) he was a member of the protected class; (2) he was meeting UPS's legitimate job expectations; (3) UPS subjected him to a materially adverse employment action; and (4) UPS treated similarly situated persons outside his protected class more favorably. *See McGowan v. Deere & Co.*, 581 F.3d 575, 579 (7th Cir. 2009); *Greene v. Potter*, 557 F.3d 765, 768 (7th Cir. 2009). "When a plaintiff produces evidence sufficient to raise an inference that the employer applied its legitimate expectations in a disparate manner, the second [legitimate expectation] and fourth [similarly situated] prongs of the *McDonnell Douglas* merge, allowing the plaintiff to establish a prima facie case by establishing that similarly situated employees were treated more favorably." *Grayson v. O'Neill*, 308 F.3d 808, 818 (7th Cir. 2002).

Regarding the first termination, UPS argues that Wheeler cannot establish a prima facie case of discrimination because Wheeler failed to meet UPS's legitimate expectations by running his route late in order to "prove a point." Wheeler counters that similarly situated white drivers were not disciplined as he was for seeking help to complete their assigned routes. "To assess whether two employees are similar for purposes of the 'similarly-situated' test, "a court must look at all relevant factors, the number of which depends on the context of the case." *McGowan*, 581 F.3d at 579 (quoting *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000)).

Wheeler is not similarly situated to the white drivers who requested help. There is no evidence that any drivers (other than Lowden) both routinely requested help finishing their routes and had otherwise been admonished for their work at all. Therefore, these drivers are not proper comparators.

Lowden's situation is most like Wheeler's, but Wheeler has failed to demonstrate that he and Lowden are similar in all relevant ways. In addition to the fact that both asked for help at some point, the two are similar in that Craft gave Lowden a letter of warning for failing to deliver a commercial package properly and UPS management spoke with Wheeler about his failure to timely deliver packages. However, Wheeler provides no evidence that Lowden requested help after he was disciplined for failing to timely deliver his packages. Wheeler likewise provides no evidence that Lowden's requests for help and his failure to deliver a package properly were temporally related at all, such that Howard and Craft might reasonably believe Lowden requested help in order to "prove a point." Also, it was not unusual for Lowden to request help, but it was for Wheeler, who would normally finish early. When Wheeler uncharacteristically requested help the same day he was reprimanded, Howard and Craft reasonably—even if incorrectly—ascertained that the timing of Wheeler's request was not unrelated to the reprimand. *See Agryropoulos v. City of Alton*, 539 F.3d 724, 736 (7th Cir. 2008) ("[The Court does] not sit as a 'super personnel review board' that second-guesses an employer's facially legitimate business decisions. Rather, we ask only whether the employer's explanation was 'honestly believed.'") (citations omitted) (quoting *Culver v. Gorman & Co.*, 416 F.3d 540, 547 (7th Cir. 2005)).

The Court assumes for purposes of this motion that Wheeler asked for help, at least in part, because of the special circumstances that day—a larger than normal disorganized load. But this fact does not contradict Howard's and Craft's stated belief that Wheeler also ran his route late and requested help in order to "prove a point." Nor has Wheeler provided any other facts to contradict this belief by Howard and Craft, which is a reasonable belief given the entire context of events. Because the circumstances in which Wheeler requested

help were different than all the other prospective comparators—including Lowden—in relevant ways, Wheeler is not similarly situated to them. Thus, the Court has no basis to upset the discipline Wheeler received prior to his termination for dishonesty.

Likewise, with respect to Wheeler's second termination, Wheeler is also not similarly situated to Mulkey, who had no prior record of discipline. In order to be similarly situated, a coworker must have a "comparable set of failings." *Lucas v. PyraMax Bank, FSB*, 539 F.3d 661, 667 (7th Cir. 2008) (quoting *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 751 (7th Cir. 2006)). Given Wheeler's prior record of discipline, his termination for dishonesty is consistent with Mulkey's forty-five day suspension for dishonesty with no prior record of discipline. Additionally, although Dabney was terminated twice for dishonesty and reinstated both times, Dabney was African-American and therefore was not "outside the protected class." *See Cerutti v. BASF Corp.*, 349 F.3d 1055, 1065 (7th Cir. 2003).

Wheeler has failed to establish the necessary prima facie showing for both of his discrimination claims. The uncontested evidence demonstrates that Wheeler was not meeting UPS's legitimate expectations when he was disciplined for failing to complete his work and terminated for dishonesty and that these adverse employment actions were consistent with the discipline UPS gave to others outside his class. Accordingly, UPS's Motion for Summary Judgment (Dkt. No. 24) is **GRANTED**.

## IV. **CONCLUSION**

For the foregoing reasons, UPS's Motion for Summary Judgment (Dkt. No. 24) is **GRANTED**.

Dated: 11/10/2009

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution to:

Ellen Marie Girard
QUARLES & BRADY LLP
ellen.girard@quarles.com

John Allen Klages
QUARLES & BRADY LLC
john.klages@quarles.com

Meghan E. Riley
QUARLES & BRADY LLP
meriley@quarles.com

Gregory A. Stowers
STOWERS & WEDDLE PC
gstowers@swh-law.com

D. Scott Watson
QUARLES & BRADY LLP
scott.watson@quarles.com